UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-283-GWU

CHARLES DOUGLAS PEAK,                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity?
   If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

> 3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Charles Douglas Peak, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar and cervical spine, neck pain, and depression.  (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Peak retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled

to benefits. (Tr. 18-22). The Appeals Council declined to review, and this action followed. (Tr. 1-8).

At the administrative hearing, the ALJ asked the VE whether the plaintiff, who was 49 years old at the time he applied for benefits (Tr. 79), could perform any jobs if he were capable of lifting 60 pounds occasionally and 20 pounds frequently, with the ability to stand and walk five hours in an eight-hour day (no more than one hour without interruption) and sit for six hours (no more than two hours without interruption), and was limited to only occasional climbing of ladders, ropes, and scaffolds. (Tr. 33). The VE responded that there were jobs that such a person could perform in the area of bench assembly and sorting and packaging, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 33-4).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Peak alleged disability due to multiple bulging discs in his back and neck, arthritis, and bone spurs. (Tr. 115). He indicated that the conditions had first bothered him after a motor vehicle accident in December, 2001, but he returned to work full-time after six months until April 1, 2005. (Id.). He testified that all of his jobs had been at manual labor, mostly in auto mechanics. (Tr. 26-7). He had stopped working due to both low back and cervical pain which radiated into his right

6

arm. (Tr. 27). He reported that his treating neurosurgeon, Dr. Steven Kiefer, would not recommend neck surgery unless his pain was unbearable, and now that he was not working, it was not bothering him as much. (Tr. 30). He felt that he could lift or carry 10-15 pounds without aggravating his neck, and was able to stand for one to two hours and sit for one hour at time. (Tr. 31).

Medical records in the transcript do include treatment notes from Dr. Kiefer, who obtained MRI studies showing old compression deformities of the lumbar spine, with protrusions and bulging at L4-S1 and facet arthropy at L3-L5, while the cervical spine had minimal foraminal stenosis at C4-C6. (Tr. 167-8). An MRI of the right shoulder showed "mild" bony erosions and thinning of cartilage which the radiologist felt were "suggestive of rheumatoid arthritis." (Tr. 178). Dr. Kiefer's office notes do not suggest any specific restrictions, although he raised the possibility of a discectomy "if his symptoms in his arm are bothersome enough . . . ." (Tr. 180).

The plaintiff asserts that it was error for the ALJ not to give controlling weight to a functional capacity assessment prepared by his treating family physician, Dr. Mohammad Shahzad. Dr. Shahzad limited his patient to lifting and carrying less than 15 pounds, standing and walking no more than three hours a day, sitting two to six hours, and added that he could occasionally climb, stoop, crouch, kneel, and crawl and needed to avoid moving machinery. (Tr. 228-30). However, Dr. Shahzad appeared to write that the medical findings supporting this assessment were

7

"[patient] states his back [and] shoulder hurt." (Tr. 228). Moreover, Dr. Shahzad's office notes, while they reflect complaints of pain, show very few specific findings other than tenderness and slightly reduced reflexes on the right side. (E.g., Tr. 160, 163, 213). The ALJ rejected the physician's assessment because it was based on the plaintiff's "subjective complaints and self-reported limitations." (Tr. 19).

The ALJ accepted the physical limitations of a one-time consultative examiner, Dr. Martin Fritzhand. (Tr. 20). Dr. Fritzhand reviewed the MRI reports. (Tr. 242). His physical examination showed that the plaintiff walked with a limping antalgic gait, but was comfortable in the sitting and supine positions and had a normal cervical range of motion with well-preserved muscle grasp and strength and normal manipulative ability. (Tr. 243-4). Mr. Peak was able to bend forward 90 degrees at the waist, stand on one leg without difficulty, and squat without difficulty. (Tr. 244). His ability to extend and flex his spine was somewhat diminished as was his range of motion with the hips slightly flexed. (Id.). Dr. Fritzhand found that Mr. Peak could perform activities consistent with the ALJ's hypothetical question. (Tr. 248-52).

The plaintiff asserts that Dr. Shahzad's restrictions were well-supported by the objective MRI studies and that the ALJ gave inadequate reasons for discounting the treating physician's opinion. Although the ALJ's reasoning was condensed, Dr. Shahzad's statement on his assessment form that he was basing the restrictions on

8

the plaintiff's statements is sufficient evidence to cast doubt on his conclusions. Moreover, although Dr. Fritzhand was a one-time examiner, he did review the MRI reports at issue, and apparently did not believe that they supported greater restrictions.  Accordingly, a reasonable finder of fact could have concluded that Dr. Shahzad was not offering an independent medical opinion, and the ALJ's reasoning was sufficient to make clear to a subsequent reviewer his reasons for discounting the treating physician's opinion.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).

The plaintiff also alleges that the ALJ inadequately evaluated his credibility, his complaints of pain, and his subjective complaints.  The ALJ stated that he found Mr. Peak's allegations "somewhat contradicted" by such daily activities as removing laundry from a dryer and folding clothes, washing a few dishes at a time, and driving his wife to work.  (Tr. 20, 126, 154).  The ALJ also cited Mr. Peak's apparent statements to a psychological examiner, Dr. Stuart Cooke, that he could wash dishes, take out trash, vacuum, sweep, fish, and go to car races out of state once or twice a year.  (Tr. 20, 234-5).  The plaintiff suggests that most of these activities are not inconsistent with the plaintiff's reported limitations.  However, the ability to travel as far as Daytona Beach, Florida to attend a car race would appear to demonstrate a level of functioning somewhat greater than the plaintiff alleges; moreover, the ALJ also reasonably considered the fact that Dr. Cooke's only

conclusion from his psychological examination was that the plaintiff was malingering.  (Tr. 236).  On the issue of whether there was sufficient objective evidence to support the plaintiff's complaints of pain under the standard set out in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986), Dr. Kiefer was clearly unsure if the findings were severe enough to warrant surgery, Dr. Fritzhand clearly did not think they were severe enough, and Dr. Shahzad, as already noted, appeared to base his opinion on the plaintiff's statements.  Accordingly, these arguments are without merit.

Finally, the plaintiff alleges that he should have been found to be disabled under the Commissioner's Listing of Impairment 12.05C, and that he should have been found to be illiterate, rather than having a "marginal" education.  (Tr. 20). Whatever may be said about the plaintiff's literacy, the VE specifically testified that the jobs he described would not require reading.  (Tr. 35).  LOI 12.05C requires, among other items, a valid verbal, performance, or full scale IQ score of 70 or below, in addition to another significant mental or physical impairment and evidence of significantly subaverage adaptive functioning prior to age 22.  Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).  In the present case, while the plaintiff was in Special Education and clearly had behavior problems as a child (Tr. 156-8, 257-9), his IQ scores of below 70 obtained by Dr. Cooke could reasonably have been found to be invalid because of malingering.  (Tr. 235-6).  The plaintiff cites to a

subsequent mental status examination, but it was performed several months after the May 15, 2008 ALJ decision. (Tr. 269-72). Evidence submitted for the first time to the Appeals Council, as this report clearly was (Tr. 8), is not part of the court's substantial evidence review. Such evidence may be used to request a remand under Sentence Six of 42 U.S.C. § 405(g) only upon a showing that the evidence was new and material and that there was good cause for failing to obtain it earlier. <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996). No such showing of good cause has been made here, and consequently the new evidence does not provide a basis for remand.

The decision will be affirmed.

This the 13th day of April, 2011.

**Signed By:**
<u>**G. Wix Unthank**</u>
**United States Senior Judge**